Grafton
No. 2010-700

CARLETON, LLC

v.

RICHARD BALAGUR & a.

Argued: June 15, 2011
Opinion Issued: September 22, 2011

*Schuster, Buttrey & Wing, P.A.*, of Lebanon (*Barry C. Schuster* and *Eric G. Derry* on the brief, and *Mr. Schuster* orally), and *Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Michael C. Harvell* on the brief), for the plaintiff.

*Vitt & Rattigan, P.L.C.*, of Norwich, Vermont (*Geoffrey J. Vitt* on the brief and orally), for the defendants.

LYNN, J. The plaintiff, Carleton, LLC, appeals from an order of the Superior Court (*Vaughan*, J.) construing RSA 293-A:14.34(g) and finding that the defendants' notice of intention to adopt articles of dissolution was timely filed. We affirm.

The record supports the following. In 1995, Bukk Carleton and defendant Richard Balagur formed defendant MTS Corporation (MTS) for the purpose of purchasing land and operating as a real estate holding company. Of the 1,000 MTS shares, Richard Balagur owned 400, his mother, defendant Adrienne Balagur, owned 100, and the trustee of a trust for Carleton's daughters owned 500. Carleton, LLC eventually purchased the trust's shares, and, thus, became the owner of fifty percent of the MTS stock. Bukk Carleton owns all of the shares of Carleton, LLC. *See Carleton, LLC v. Richard Balagur & a.; Carleton, LLC v. Richard Balagur; Richard Balagur v. Bukk Carleton,* No. 2008-0008 (N.H. January 21, 2009).

In August 2001, MTS purchased the Whipple Building in Lebanon. At that time, Richard Balagur was the president of MTS; Bukk Carleton served as its vice-president, secretary, and treasurer. The relationship between Richard Balagur and Bukk Carleton soon began to deteriorate. *See id.*

In May 2004, Carleton, LLC brought an action against MTS and Richard Balagur to dissolve MTS, *see* RSA 293-A:14.30 (2010), obtain payment of rent due MTS, and remove Richard Balagur as an officer and director of MTS. Carleton, LLC also brought actions against Richard Balagur concerning MTS's other primary asset, a cell tower located in Laconia. In February 2005, Richard Balagur brought an action to compel MTS to transfer the cell tower to him and pay him certain funds. Adrienne Balagur successfully moved for leave to file an election to purchase shares in lieu of dissolution, pursuant to RSA 293-A:14.34 (2010). The cases were consolidated and tried. *See Carleton, LLC v. Richard Balagur & a., supra.*

The central issue at trial was how to value Carleton, LLC's fifty percent ownership of MTS, which Adrienne Balagur sought to acquire. We affirmed the trial court's ruling that the "fair value" of Carleton, LLC's ownership of MTS, *see* RSA 293-A:14.34(a), was equal to its proportionate interest in MTS valued as a going concern, and declining to apply a lack of marketability discount to the value of Carleton, LLC's shares. *See Carleton, LLC v. Richard Balagur & a., supra.*

Carleton, LLC then sought to have Adrienne Balagur proceed with her election to purchase the shares. She refused, and Carleton, LLC requested the trial court to enforce her election. Adrienne Balagur objected, sought to adjust the purchase price, and offered to pay for the shares over a term of twenty years. On May 13, 2010, we affirmed the trial court's order denying Adrienne Balagur's requests for certain adjustments to the valuation of MTS, for certain credits toward the purchase price of Carleton, LLC's shares, and to pay in installments. Concluding "that the trial court did not err in its terms and conditions of purchase" of the shares, we also affirmed its appointment of a commissioner to sell the Whipple Building in the event

that Adrienne Balagur did not comply with its payment order. *See Carleton, LLC v. Richard Balagur & a.*; *Carleton, LLC v. Richard Balagur*; *Richard Balagur v. Bukk Carleton*, No. 2009-0708 (N.H. May 13, 2010). Our mandate was issued on May 27, 2010. *See* SUP. CT. R. 24.

On June 7, 2010, Richard Balagur, Adrienne Balagur, and MTS (the current defendants) filed a notice of intention to adopt articles of dissolution. Carleton, LLC objected, contending that the notice was not timely filed under RSA 293-A:14.34(g) because it was not filed within ten days of the date on which our May 13 order became final. Richard Balagur and MTS argued that our May 13 order was not final until we issued the mandate on May 27, 2010, and, consequently, their notice was filed within ten days after that date. Relying on *State v. Gubitosi*, 153 N.H. 79 (2005), the trial court agreed and ruled that our May 13 order was "final and effective on the date the mandate issue[d]," and that the defendants' notice was timely filed. *Carleton, LLC v. Richard Balagur and MTS Development Corp.*, No. 04-C-102 (N.H. Super. Ct. July 9, 2010). Carleton, LLC unsuccessfully moved for reconsideration, and this appeal followed.

On appeal, Carleton, LLC contends that the defendants' notice was untimely. Specifically, it argues that, because the defendants did not file a motion for reconsideration, our May 13 order became final on May 24, 2010, and the ten-day period referred to in RSA 293-A:14.34(g) expired on June 3, 2010. The defendants contend that their notice of June 7 was timely because it was filed within ten days after the mandate was issued on May 27, 2010. All parties agree that June 7, 2010, marked the end of the ten-day period after the date of the mandate, as June 6, 2010, was a Sunday. *See* SUP. CT. R. 27.

Resolution of this issue requires our review of the trial court's interpretation of RSA 293-A:14.34(g).

> This court is the final arbiter of the legislature's intent regarding the meaning of a statute considered as a whole, and our review of the trial court's statutory interpretation is *de novo*. We first examine the language of the statute, and where possible, we ascribe the plain and ordinary meanings to the words used. When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we refuse to consider what the legislature might have said or add language that the legislature did not see fit to incorporate in the statute. Finally, we interpret a statute in the context of the overall statutory scheme and not in isolation.

*Bendetson v. Killarney, Inc.*, 154 N.H. 637, 641 (2006) (citations omitted). RSA 293-A:14.34(g) provides:

> The purchase ordered pursuant to subsection (e), shall be made within 10 days after the date the order *becomes final,* unless before that time the corporation files with the court a notice of its intention to adopt articles of dissolution pursuant to RSA 293-A:14.02 and RSA 293-A:14.03, which articles shall then be adopted and filed within 50 days thereafter. Upon filing of such articles of dissolution, the corporation shall be dissolved in accordance with the provisions of RSA 293-A:14.05 through 293-A:14.07 and the order entered pursuant to subsection (e) shall no longer be of any force or effect, except that the court may award the petitioning shareholder reasonable fees and expenses in accordance with the provisions of the last sentence of subsection (e) and the petitioner may continue to pursue any claims previously asserted on behalf of the corporation.

(Emphasis added.)

 We have not previously addressed when a court order directing the purchase of a corporation's shares "becomes final" within the context of RSA 293-A:14.34(g). In *Gubitosi,* however, we clarified the authority of the superior court to revoke a defendant's bail during the pendency of an appeal and after the issuance of an opinion affirming the defendant's conviction. *Gubitosi,* 153 N.H. at 80. Specifically, we stated:

> When this court issues an opinion affirming a criminal conviction, the defendant has ten days from the date of the opinion to file a motion for reconsideration. SUP. CT. R. 22(2). If a motion for reconsideration is filed, and subsequently denied, the clerk of the supreme court will forward to the clerk of the superior court a "mandate" within seven days of the order denying the motion. SUP. CT. R. 24(1). However, even if no motion for reconsideration is filed, the supreme court clerk will not forward the mandate to the superior court clerk until after the time for filing a motion for reconsideration has expired, *see id.,* unless this court orders otherwise. Although the supreme court may direct that a "formal mandate" be issued, the mandate will usually consist of a certified copy of the court's opinion or final order. *See* SUP. CT. R. 24(2).
>
> The mandate is the order that gives authoritative notice to the trial court that the judgment appealed from has been reversed or affirmed, as the case may be. The general rule is that the date of the mandate, not the date of the issuance of the decision, is the

effective date of an appellate court's decision, that the mandate is the order and that the court's opinion merely gives the reason supporting the order.

In this case, the effective date of our decision was the date the mandate was issued . . . .

*Id.* at 81-82 (citations, quotation, and emphases omitted). We conclude that the trial court was correct in its application of our reasoning in *Gubitosi* to the facts of the instant case.

Carleton, LLC first argues that the plain meaning of "becomes final," for the purposes of RSA 293-A:14.34(g), is to "become unalterable," and that our May 13 order became unalterable on May 24, 2010, when the period for filing a motion for reconsideration expired. It argues that the trial court erred in finding the defendants' June 7, 2010 filing timely because once the period for filing a motion to reconsider expired, "there was nothing more the parties could do to alter or change this Court's Order." We disagree.

█ Although Supreme Court Rule 22 provides for a motion for reconsideration to be filed within ten days of the order, the defendants could have filed for leave to submit a motion for reconsideration after the deadline, but before a mandate had issued. *See* SUP. CT. R. 1 ("In the interest of expediting a decision, or for other good cause shown, the supreme court or a single justice thereof may suspend the requirements or provisions of any of these rules in any instance on application of a party or on the court's or a single justice's motion."); SUP. CT. R. 24 (issuance of mandate). In addition, and even absent a motion for reconsideration on the defendants' part, we could have *sua sponte* modified or withdrawn the order anytime prior to issuing the mandate. Consequently, we fail to see how our May 13 order could have become unalterable on May 24. Instead, the order became final for purposes of RSA 293-A:14.34(g) when the mandate was issued on May 27, and jurisdiction over the case was transferred back to the trial court. *See Gubitosi*, 153 N.H. at 81 ("As a general rule the perfection of an appeal divests the Trial Court of jurisdiction of the cause and transfers it to the appellate court." (quotation omitted)); *Charpentier v. Ortco Contractors*, 480 F.3d 710, 713 (5th Cir. 2007) ("This court retains control over an appeal until we issue a mandate. Before our mandate issues, we have the power to alter or modify our judgment. Accordingly, our decision is not final until we issue a mandate."); SUP. CT. R. 24(4) ("Pleadings filed after the mandate has issued may not be considered or acted upon by the [supreme] court.").

█ Further, we disagree with Carleton, LLC's argument that, because the defendants' filing of the notice of intention to adopt articles of

dissolution required no exercise of jurisdiction by the trial court, and involved action "only by a party . . . and none by the trial court," the expiration of the reconsideration period, and not the issuance of the mandate, should determine finality under RSA 293-A:14.34(g). We do not view a corporation's filing of a notice of its intention to adopt articles of dissolution in a vacuum. The corporation's filing clearly involved the trial court in that it was intended to block the purchase of the corporation's shares as previously ordered by the trial court pursuant to RSA 293-A:14.34(e). More important, we view the nature of the defendants' filing as irrelevant to the issue of providing parties with certainty as to when an order of this court "becomes final" under the statute. In other words, even if the trial court does not exercise jurisdiction or take any action, the calculus behind the finality of our order should remain constant.

Nor are we persuaded by Carleton, LLC's argument that the expiration of the reconsideration period determines finality for the purposes of RSA 293-A:14.34(g) because the mandate is "supplied only to the trial court, and not to the parties" and our order "is the only notice that provides the parties with any degree of certainty in planning their affairs and subsequent courses of conduct." As noted, the defendants could have filed for leave to submit a motion for reconsideration of our May 13 order even after the expiration of the reconsideration period but before a mandate had issued. In addition, we could have *sua sponte* modified or withdrawn the order anytime prior to issuing the mandate. While we agree with Carleton, LLC that our order was "the only authoritative notice issued to the parties," we reiterate that the order was subject to modification. Consequently, it was not unalterable and did not provide certainty to the parties in terms of planning their affairs and subsequent courses of conduct.

Finally, Carleton, LLC contends that in light of the circumstances of this case and the intended purpose of RSA chapter 293-A, the timing provision of RSA 293-A:14.34(g) should be construed to use the expiration of the reconsideration period to determine finality "because that is the only date certain known to the parties." For the purposes of this appeal, we assume that Carleton, LLC is correct that the legislature's intended purpose in enacting RSA chapter 293-A was "to provide certainty as to the formation, management and dissolution of corporations" in New Hampshire. Carleton, LLC argues that "the only reasonable deadline known to the parties, by which a party must take action under RSA 293-A:14.34(g), is the tenth day following the expiration of the reconsideration period." Such an assumption of certainty based on the mere expiration of the reconsideration period, however, is not warranted.

Here, our May 13 order provided a date certain to determine the deadline for filing a motion for reconsideration. *See* SUP. CT. R. 22(2). The

defendants did not file a motion for reconsideration of the May 13 order, and there was no copy of a motion or notice of the filing for Carleton, LLC to receive by first class mail. *See* SUP. CT. R. 22(1). As such, Carleton, LLC apparently — and, in this case, correctly — assumed that no motion for reconsideration had been filed. If, however, the defendants *had* filed a motion for reconsideration of our May 13 order and properly mailed a copy of the motion and notice of the filing to Carleton, LLC, there is no guarantee that it would have received the copy and notice before the expiration of the reconsideration period on May 24. For Carleton, LLC to immediately proceed to plan its affairs and subsequent courses of conduct based on such an assumption of certainty would have been at its own risk. Instead, we believe that such certainty can come only with the parties' verification that the mandate has been issued by this court. The mandate issues within seven days after the expiration of the time to file a motion for reconsideration, or within seven days after this court issues an order denying a timely motion for reconsideration, whichever is later. *See* SUP. CT. R. 24(1).

While we might agree that the better practice would be for the mandate to be issued to the parties in addition to the trial court, we decline to use this case as a vehicle to, in essence, amend Rule 24. Instead, consideration of any such change is better left to the rulemaking process. *See Martinez v. Nicholson*, 154 N.H. 397, 399 (2006); SUP. CT. R. 51.

*Affirmed.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.