Grafton
No. 2012-061

CARLETON, LLC

v.

RICHARD BALAGUR *& a.*

CARLETON, LLC

v.

RICHARD BALAGUR

RICHARD BALAGUR

v.

BUKK CARLETON

Argued: September 20, 2012
Opinion Issued: December 21, 2012

*Schuster, Buttrey & Wing, P.A.*, of Lebanon (*Barry C. Schuster* and *Eric G. Derry* on the brief, and *Mr. Schuster* orally), for Carleton, LLC.

*Vitt & Associates PLC*, of Norwich, Vermont (*Geoffrey J. Vitt* on the brief and orally), for MTS Development Corporation, Richard Balagur, and Adrienne Balagur.

BASSETT, J. Carleton, LLC appeals from an order of the Superior Court (*Vaughan*, J.) denying its motion to vacate and set aside articles of dissolution filed by MTS Development Corporation (MTS) and denying its renewed motion to enforce creditor status. We affirm.

This is the fourth time this case has come before us. A detailed account of the underlying facts and procedural history can be found in our previous decisions, *see Carleton, LLC v. Balagur*, 162 N.H. 501, 503-04 (2011) (citing previous cases). We recite only those facts pertinent to this appeal.

In 1995, Bukk Carleton and Richard Balagur formed MTS for the purpose of purchasing land in Lebanon and operating as a real estate holding company. Originally, of the 1,000 total MTS shares, Richard Balagur owned 400, his mother, Adrienne Balagur, owned 100, and the trustee of a trust for Bukk Carleton's daughters owned 500. Carleton, LLC eventually purchased the trust's shares and, thus, became the owner of fifty percent of MTS's stock. Bukk Carleton owns all of the shares of Carleton, LLC. In May 2004, Carleton, LLC brought an action against MTS and Richard Balagur to, among other things, dissolve MTS, *see* RSA

293-A:14.30(b) (2010). In January 2005, Adrienne Balagur successfully moved for leave to file an election to purchase shares in lieu of dissolution, pursuant to RSA 293-A:14.34 (2010). The case was consolidated with other related actions and tried to the court.

The central issue at trial was how to value Carleton, LLC's fifty percent ownership of MTS, which Adrienne Balagur sought to acquire. Following the trial court's ruling on the value of Carleton, LLC's ownership interest, *see* RSA 293-A:14.34(d), the Balagurs moved to terminate Carleton, LLC's rights and status as a shareholder of MTS. The court granted the motion, ruling that "RSA 293-A:14.34(f) requires removal of a shareholder whose shares have been valued for an elective purchase" and that, thereafter, Carleton, LLC would be considered "a creditor of MTS until [it] receives payment for the shares purchased." Shortly thereafter, the court granted Carleton, LLC's request for a security interest in order "[t]o protect and preserve the value of the award provided to [Carleton, LLC] by the [c]ourt in granting" Adrienne Balagur's election remedy. On July 26, 2009, the trial court ordered "that the election to purchase [Carleton, LLC's] shares be accomplished within ninety (90) days from the date of the Clerk's notice of this order . . . in one lump sum." We affirmed this ruling on May 13, 2010. *See Carleton, LLC v. Richard Balagur & a.; Carleton, LLC v. Richard Balagur; Richard Balagur v. Bukk Carleton*, No. 2009-0708 (N.H. May 13, 2010).

On June 7, 2010, MTS filed a notice of intention to adopt articles of dissolution. *See* RSA 293-A:14.34(g). Carleton, LLC objected, asserting that the notice was not timely filed under RSA 293-A:14.34(g). *See Carleton, LLC*, 162 N.H. at 504. In September 2011, we affirmed the trial court's finding that the notice of intention to adopt articles of dissolution was timely filed. *See id.* at 502.

Subsequently, Carleton, LLC moved to vacate and set aside the articles of dissolution filed by MTS, arguing that Adrienne Balagur's election to purchase Carleton, LLC's shares was irrevocable and that the shareholders could not validly authorize the later filed articles of dissolution. Carleton, LLC also filed a motion for an accounting of all income and expenses of MTS. It further filed a renewed motion to enforce its creditor status, arguing that "[w]hile RSA 293-A:14.34(g) addresses the *terms* of purchase, nowhere does the statute abandon the court's fair value determination." It maintained that the trial court's order on "fair value" and on creditor status are now the law of the case and "remain unaffected by [MTS and the Balagurs'] attempt to dissolve MTS."

The trial court denied the motion; however, it agreed that an accounting should occur and ordered "a full accounting of the books and records of MTS." The court further denied Carleton, LLC's renewed motion to

enforce creditor status, finding "that the provisions of RSA 293-A:14.34(g) void the provisions of RSA 293-A:14.34(e)," and that it was "constrained by the application of RSA 293-A:14.34(g)." Carleton, LLC's motion to reconsider was denied, and this appeal followed.

On appeal, Carleton, LLC contends that the trial court erred in its application of RSA 293-A:14.34 and in failing to enforce its order making Carleton, LLC a secured creditor. It also contends that corporate dissolution is an equitable proceeding and, as such, the trial court erred in failing "to enforce the 'principles of fair play' embodied in RSA 293-A:14.34" and in failing to balance the competing interests of the parties. It further asserts that Adrienne Balagur is estopped from avoiding her election to purchase Carleton, LLC's shares of MTS. We address each argument in turn.

Carleton, LLC first argues that the trial court erred in utilizing RSA 293-A:14.34(g) as a basis for denying its renewed motion to enforce creditor status. It maintains that the court's order making Carleton, LLC a secured creditor was not issued pursuant to RSA 293-A:14.34(e) and, thus, RSA 293-A:14.34(g) could not have voided the order. It further contends that the court's order establishing Carleton, LLC as a secured creditor is a final order that could not be altered or vacated.

Resolving this issue requires us to interpret RSA 293-A:14.34. We are the final arbiter of the legislature's intent regarding the meaning of a statute considered as a whole, and our review of the trial court's statutory interpretation is *de novo*. *Bendetson v. Killarney, Inc.*, 154 N.H. 637, 641 (2006). We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. *Id.* When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we refuse to consider what the legislature might have said or add language that the legislature did not see fit to incorporate in the statute. *Id.* Finally, we interpret a statute in the context of the overall statutory scheme and not in isolation. *Id.*

RSA 293-A:14.34 governs the procedure to be followed when a corporation or other shareholders elect to purchase all of the shares of a shareholder who has petitioned for dissolution. Once an election to purchase is filed, the parties have sixty days to "reach [an] agreement as to the fair value and terms of purchase of the petitioner's shares," and "the court shall enter an order directing the purchase of petitioner's shares upon the terms and conditions agreed to by the parties." RSA 293-A:14.34(c). If, however, the parties fail to reach an agreement, either party may petition the court to stay the dissolution proceedings and "determine the fair value of the petitioner's shares." RSA 293-A:14.34(d).

"Upon determining the fair value of the shares, the court shall enter an order directing the purchase upon such terms and conditions as the court deems appropriate . . . ." RSA 293-A:14.34(e). Once the court enters an order under RSA 293-A:14.34(e),

> the court shall dismiss the petition to dissolve the corporation under RSA 293-A:14.30, and the petitioning shareholder shall no longer have any rights or status as a shareholder of the corporation, except the right to receive the amounts awarded to him by the order of the court which shall be enforceable in the same manner as any other judgment.

RSA 293-A:14.34(f). RSA 293-A:14.34(g) then provides that:

> The purchase ordered pursuant to subsection (e), shall be made within 10 days after the date the order becomes final, unless before that time the corporation files with the court a notice of its intention to adopt articles of dissolution pursuant to RSA 293-A:14.02 and RSA 293-A:14.03, which articles shall then be adopted and filed within 50 days thereafter. Upon filing of such articles of dissolution, the corporation shall be dissolved in accordance with the provisions of RSA 293-A:14.05 through 293-A:14.07 and *the order entered pursuant to subsection (e) shall no longer be of any force or effect*, except that the court may award the petitioning shareholder reasonable fees and expenses in accordance with the provisions of the last sentence of subsection (e) and the petitioner may continue to pursue any claims previously asserted on behalf of the corporation.

(Emphasis added.)

 Since our election statute is nearly identical to the like provision in the Model Business Corporation Act, *see* MODEL BUS. CORP. ACT ANNOTATED § 14.34 (4th ed. 2011), "we look to the official comments of the model act for guidance on the intended meaning of the election statute." *Bendetson*, 154 N.H. at 643. One comment states that, "[i]n addition to the usual rights of appeal available to any party under the laws of the local jurisdiction, subsection (g) affords the alternative of voluntary dissolution after entry of an order under subsection (e)." MODEL BUS. CORP. ACT ANNOTATED § 14.34 cmt. 4D, at 14-172. The comment explains, in relevant part, that:

> If the corporation elects to dissolve, the petitioning shareholder will receive his or her pro rata share of the liquidating proceeds

distributed to shareholders without reference to the "value" of the shares as determined by the court under subsection (e). By virtue of subsection (f), the petitioning shareholder would not be entitled to vote on a proposal to adopt articles of dissolution under section 14.02. Once articles of dissolution are filed, however, subsection (g) provides that the order under subsection (e) is "no longer of any force or effect." Accordingly, subsection (f) no longer applies, the petitioner resumes shareholder status and will be entitled to a pro rata share of any liquidating distribution to shareholders.

*Id.* at 14-173.

Applying this interpretation to this case, once the articles of dissolution were filed under RSA 293-A:14.34(g), the trial court's order under RSA 293-A:14.34(e), directing the terms and conditions of the purchase of Carleton, LLC's shares, no longer had any force or effect. *See* RSA 293-A:14.34(g). Moreover, RSA 293-A:14.34(f), providing that "the petitioning shareholder shall no longer have any rights or status as a shareholder of the corporation," no longer applied and Carleton, LLC "resume[d] shareholder status and will be entitled to a pro rata share of any liquidating distribution to shareholders." MODEL BUS. CORP. ACT ANNOTATED § 14.34 cmt. 4D, at 14-173.

While Carleton, LLC is correct that the trial court's order establishing it as a secured creditor of MTS was issued prior to the order dictating the terms and conditions of purchase under RSA 293-A:14.34(e), the order *was* issued in relation to, and resulting from, Adrienne Balagur's election to purchase shares in lieu of dissolution; indeed, the trial court specifically relied upon RSA 293-A:14.34(f) as the authority for its initial order. Here, Adrienne Balagur no longer sought to acquire Carleton, LLC's shares; instead, MTS elected to dissolve pursuant to RSA 293-A:14.34(g). It follows, therefore, that the order granting creditor status to secure Carleton, LLC's payment of shares was rendered moot because, in the absence of Adrienne Balagur's election to purchase, it has no practical significance. *Cf. In the Matter of O'Neil & O'Neil,* 159 N.H. 615, 624 (2010) (concluding that the issue of whether the family division had jurisdiction to order the sale of the respondent's company was moot because the company was ultimately sold by the trustee pursuant to an order of the bankruptcy court). Therefore, the trial court did not err by denying Carleton, LLC's motion to enforce creditor status.

Carleton, LLC next argues that the trial court erred when it failed to exercise its "inherent equitable authority . . . to address the circumstances of this particular case." It contends that RSA 293-A:14.34 does not constrain the trial court's authority to issue equitable orders in a judicial

dissolution proceeding and, thus, the court should have "balance[d] the competing interests of the parties" and "enforce[d] the 'principles of fair play' embodied in RSA 293-A:14.34 and as recognized . . . in *Bendetson*."

In *Bendetson*, we analyzed the election irrevocability provision in RSA 293-A:14.34(a) and held that, with respect to subsection (a), the legislature expressly allowed for the trial court to consider the equities in a particular case. *Bendetson*, 154 N.H. at 643-45. We reasoned that the legislature's explicit reference to the court's equitable powers in both RSA 293-A:14.34(a) and (b) indicates that it intended to empower the court to enforce principles of fair play in situations that are often rife with tension and ill-will. *Id.* at 645. We concluded that RSA 293-A:14.34(a) renders the electing party's right subject to the trial court's authority to set aside the election when equity so requires. *Id.* at 646.

An examination of the language of RSA 293-A:14.34(g), however, requires a different conclusion. Unlike the language in RSA 293-A:14.34(a), which expressly allows the trial court to utilize its equitable authority to set aside an election to purchase, *id.*, the language in subsection (g) does not grant such authority once articles of dissolution have been filed pursuant to that subsection. On the contrary, as discussed above, the language in subsection (g), along with the comments to the Model Business Corporation Act, leaves "no question that the filing of an intention to adopt articles of dissolution at that time automatically nullifies the order [under subsection (e)] and triggers the dissolution process without further order of the court." *Fierro v. Templeton*, 857 So. 2d 931, 933 (Fla. Dist. Ct. App. 2003) (analyzing nearly identical subsection in Florida's election to purchase statute). Had the legislature intended to grant the court equitable authority to set aside dissolution under subsection (g), it could have expressly done so, as it did in subsection (a).

We recognize the legitimacy of the concerns associated with depriving the trial court of authority to consider the equities when voluntary dissolution is sought under subsection (g). Although many states, including New Hampshire, have modeled their election statute on the Model Business Corporation Act, there is a paucity of authority addressing the subsection at issue in this case. However, in one case, *Jones v. Pfaff*, 77 So. 3d 884 (Fla. Dist. Ct. App. 2012), where the underlying facts were markedly similar to this case, Judge Morris of the Florida District Court of Appeals specially concurred to "express [his] concern with the language" of the similar election subsection in Florida's statute. *Jones*, 77 So. 3d at 885-86 (*Morris*, J., concurring specially). As he observed, the language in the subsection at issue allows a fifty percent shareholder to avoid dissolution

"simply by asserting his intention to purchase the shares but then later filing the notice of intention to adopt articles of dissolution, either because he intended to do so all along or because he was dissatisfied with the determined fair value of the petitioning shareholder's shares." *Id.* at 888 (*Morris*, J., concurring specially). We share the concerns expressed by Judge Morris. As we acknowledged in *Bendetson*, to avoid dissolution's adverse effects on shareholders, employees, and others who may have an interest in the continuation of the business, "election is often favored over judicial dissolution as a remedy." *Bendetson*, 154 N.H. at 645 (quotation omitted). Nonetheless, we are constrained by the clear language of the statute and we will not rewrite it; that is the province of the legislature. *See Balke v. City of Manchester*, 150 N.H. 69, 73 (2003).

█ We do note, however, that while the application of RSA 293-A:14.34(g) may, in some instances, be unfair to a petitioning shareholder, the statute expressly provides "that the court may award the petitioning shareholder reasonable fees and expenses in accordance with the provisions of the last sentence of subsection (e) and the petitioner may continue to pursue any claims previously asserted on behalf of the corporation." Indeed as explained in the Model Business Corporation Act,

> [t]o prevent use of voluntary dissolution to evade responsibilities, subsection (g) . . . provides that the filing of articles of dissolution does not affect either the court's award of expenses to the petitioner under subsection (e) or the petitioner's standing to pursue derivative claims on behalf of the corporation, provided that the derivative claims ha[ve] been previously asserted by the petitioner in the section 14.34 proceedings or otherwise.

MODEL BUS. CORP. ACT ANNOTATED § 14.34 cmt. 4D, at 14-173. Moreover, once the articles of dissolution are filed, the petitioning shareholder is "entitled to a pro rata share of any liquidating distribution to shareholders." *Id.*

Carleton, LLC further contends that the trial court "err[ed] in finding that [MTS and the Balagurs] followed appropriate procedures for dissolving the corporation where the court held no hearing or took any evidence on the issue." We decline to address this argument, however, because it is not fully developed in Carleton, LLC's brief. *See Wyle v. Lees*, 162 N.H. 406, 414 (2011).

█ Finally, Carleton, LLC argues that "Adrienne Balagur is both equitably and judicially estopped from avoiding her purchase of Carleton's shares." We disagree. "A party may not assert equitable estoppel to avoid the application of a statute." *Appeal of Alexander*, 163 N.H. 397, 409 (2012)

(quotation and brackets omitted); cf. *Petition of Perkins*, 147 N.H. 652, 655-56 (2002) (finding that petitioner's estoppel claim failed because her reliance upon representations contrary to the statute was unreasonable). As discussed above, once MTS filed the articles of dissolution, RSA 293-A:14.34(g) provides that it "shall be dissolved." Thus, under the plain language of the statute, equitable estoppel cannot be used to circumvent the dissolution. *See McCarthy v. Wheeler*, 152 N.H. 643, 645 (2005) ("[U]se of the word 'shall' is generally regarded as a command . . . [and] is significant as indicating the intent that the statute is mandatory."). For these reasons, we similarly conclude that Carleton, LLC cannot avoid application of RSA 293-A:14.34(g) by asserting judicial estoppel.

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.