**2022 UT 6**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

VICKI HILLS, BURKE HILLS, H&N HOLDINGS, LLC
*Appellants*,

*v.*

DIANNE C. NELSON
*Appellee and Cross-Appellant.*

No. 20190182
Heard February 8, 2021
Filed February 10, 2022

On Direct Appeal

Third District, Salt Lake City
The Honorable Matthew Bates
No. 150900638

Attorneys:

R. Stephen Marshall, Kevin M. Paulson, Salt Lake City, for
appellants Vicki J. Hills and H&N Holdings, LLC

Robert F. Babcock, Andrew L. Berne, Salt Lake City, for appellant
Burke A. Hills

Michael D. Stanger, Zachary T. Shields, Scarlet R. Smith, Salt Lake
City, for appellee and cross-appellant Dianne Nelson

Michael R. Johnson, Douglas Monson, Brent D. Wride, Salt Lake
City, for John H. Curtis, receiver for H&N Holdings, LLC

JUSTICE HIMONAS authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1 This case arises from the internal breakdown and
subsequent judicial dissolution of H&N Holdings, LLC—a Utah

limited liability company owned by Dianne Nelson and Vicki Hills and formerly managed by Vicki's[1] husband, Burke Hills.

¶2   In 2015, Dianne filed a lawsuit seeking (among other claims) the dissolution of H&N and the removal of Burke as manager on the grounds that Burke had acted in an illegal, oppressive, and fraudulent manner. In lieu of dissolution, H&N and Vicki filed elections to purchase Dianne's membership interest in H&N, as provided by Utah Code section 48-2c-1214 (the election statute) (repealed).[2]  The district court, however, read the election statute to grant it broad discretion to deny the elections on equitable grounds. While Dianne's dissolution claim was stayed pending the valuation of the fair market value of her membership interest in H&N, the district court dismissed H&N's and Vicki's elections and ordered, *sua sponte*, the dissolution of H&N, the removal of Burke as manager, and the appointment of a receiver to liquidate H&N's assets.

¶3   Utah limited liability companies are creatures of statute, and our courts are bound by the laws set forth by the legislature. Utah Code section 48-2c-1214 grants limited liability companies the absolute right to purchase a members' interest in the company in lieu of dissolution when that member petitions for dissolution. District courts are not permitted to dismiss duly-filed elections on equitable grounds. As such, we find that the district court erred when it dismissed H&N's election and ordered the dissolution of the company.

¶4   Moreover, the due process clause of the Utah Constitution affords all parties the right to receive notice and an opportunity to be heard on all claims that adversely affect their property interests. Vicki was a party to the proceedings below, and she is a 50% member of H&N. Nevertheless, the district court ordered the dissolution of H&N and the removal of Burke as manager *sua*

---

[1] Throughout the litigation, the parties have referred to one another in their papers by their given names. We continue this practice where appropriate.

[2] The litigation in this case commenced prior to the date the Utah Revised Uniform Limited Liability Company Act of 2013 began to govern H&N. *See* UTAH CODE § 48-3a-14(1). As such, all citations herein are to the Utah Revised Limited Liability Company Act of 2001 (repealed in 2016).

*sponte*—without providing Vicki adequate notice or an opportunity to present evidence or argument on the issues. Accordingly, we find that the district court erred in its orders to dissolve H&N and remove Burke as manager for the separate reason that the orders violated Vicki's constitutional due process rights.

¶5   For these reasons, and the reasons set forth further below, we reverse the district court's orders and remand this case back to the district court with instructions to continue the valuation and election proceedings in the manner prescribed by the election statute.

## BACKGROUND

¶6   Vicki Hills and Dianne Nelson are each 50% members of H&N.[3] They formed H&N in 2010 as a manager-managed LLC for the purpose of holding real property. Vicki's husband, Burke Hills, was the manager of H&N, but he was not a member. At the time of H&N's formation, Burke and Dianne's husband (Russell Nelson) co-owned a construction company named Hills Construction, Inc. (HCI).

¶7   In 2014, the Nelsons began to suspect Burke of misappropriating HCI's corporate funds and assets. This led the Nelsons to investigate Burke's management of H&N. The Nelsons brought suit the following year asserting various claims against the Hills, H&N, and HCI. Russell's claims against Burke and HCI were eventually settled, extinguishing Russell's and HCI's interest in this case. Dianne asserted claims of breach of fiduciary duty, fraud, and accounting against Burke and claims of unjust enrichment and conversion against both Vicki and Burke (collectively, the Tort Claims). Dianne also sought the removal of Burke as H&N's manager and the dissolution of H&N under the Utah Revised Limited Liability Company Act. UTAH CODE §§ 48-2c-809, 48-2c-1210.

---

[3] Where possible, we recite the facts in accordance with the district court's findings. We note, however, that Vicki complains of the district court using certain facts determined at the valuation hearing to decide issues not properly before it. Because those facts are ultimately irrelevant to our resolution of the issues before us, we do not recite them here.

¶8   In response, H&N filed an election to purchase Dianne's membership interest in lieu of dissolution pursuant to Utah Code section 48-2c-1214. Vicki also filed a "conditional" election in the event the district court determined H&N's election ineffective or invalid. Pursuant to the election statute, the district court stayed the dissolution proceedings to determine the fair market value of Dianne's membership interest. *See id.* § 48-2c-1214(4).

¶9   Following extensive discovery, the district court held a valuation hearing in 2017 for the sole purpose of determining the fair market value of Dianne's membership interest. Ruling from the bench, and notwithstanding the stay of the dissolution proceedings, the district court found "that the election that has been made by H&N and by the Hills in this case should be set aside in the interest of equity." The court found that dissolution was proper because Burke had committed "multiple acts of fraud and oppression" as manager of H&N. The court ordered the dissolution of H&N, the removal of Burke as manager, and the appointment of a receiver to liquidate H&N's assets.

¶10 The district court located its authority to dismiss H&N's election and order dissolution in subsection 1214(1) of the election statute. That provision states that "[a]n election pursuant to this section is irrevocable unless the court determines that it is equitable to set aside or modify the election." *Id.* § 48-2c-1214(1). The court interpreted this provision to protect "the moving party so that the nonmoving parties cannot use the right to make an election in a way that is abusive or unfair." The court found that Burke managed H&N fraudulently and oppressively from its inception. Because the Utah Revised Limited Liability Company Act defines "fair market value" to include "all relevant discounts or premiums," *id.* § 48-2c-904, the court interpreted the election statute to permit H&N "to buy out Dianne at a greatly discounted price" once the marketability and minority discounts were applied.[4] As such, the district court concluded that dissolution was

---

[4] A minority discount adjusts the value of a minority interest in a company to reflect the fact that the interest lacks sufficient voting power to control the company's decisions and management. A marketability discount adjusts the value of a membership interest to reflect the fact that there is no readily available market for the interest. *See* 18A AM. JUR. 2D *Corporations* § 700 (2021).

necessary to ensure that H&N's assets would "be split 50/50 right down the middle."

¶11 Following the district court's ruling, Dianne moved for attorney fees under Utah Code section 48-2c-1214(5)(d), which provides for attorney fees and costs in the case of judicial dissolution under section 1210(2)(b). The district court eventually granted Dianne $191,963.07 in attorney fees, $52,928.35 in expert fees, and $1,446.17 in costs, all to be paid by H&N as part of its liquidation.

¶12 Dianne also sought to amend her initial complaint to assert a claim challenging the legal fees and costs incurred by H&N in the litigation under a theory of breach of fiduciary duty. This claim rested on Dianne's assertion that "[i]n pursuing the purchase of Dianne's interest, which stood solely to benefit Vicki, Burke and Vicki have caused H&N to pay attorney fees, thereby diminishing significantly the assets of H&N, with no benefit to Dianne." The district court raised the "threshold question" of whether Dianne had standing to assert this claim, which, at first glance, the district court considered to belong to H&N. Dianne argued that she had standing under the closely held business exception as articulated in *Banyan Investment Co. v. Evans*, 2012 UT App 333, 292 P.3d 698, because Burke's "fraud and oppression . . . were directed uniquely at Dianne personally." The district court, at first, agreed.

¶13 Meanwhile, Burke responded with a cross-claim against H&N for unjust enrichment based on his years of company management without pay.

¶14 Again ruling from the bench, the district court disposed of all remaining claims. Regarding Dianne's challenge to H&N's costs and fees incurred in the litigation, the court reversed its initial ruling that Dianne had standing under the closely held corporation exception. The court explained that because the receivership gave the receiver "full authority" to manage the legal affairs of H&N, including the right to "litigate or settle" claims against alleged tortfeasors, the exception no longer applied. As for Dianne's remaining Tort Claims, the court granted summary judgment to the Hills. Finally, the court granted Dianne summary judgment on Burke's unjust enrichment claim because "this claim kind of boils down to Mr. Hills claiming that it was unjust that he didn't pay himself."

¶15 The district court entered final judgment on March 5, 2019. The parties now appeal. Vicki appeals the orders dismissing H&N's and Vicki's elections, dissolving H&N, and removing

Burke as manager. She also appeals the award of attorney fees to Dianne under Utah Code section 48-2c-1214(5)(d). Burke appeals the summary disposition of his cross-claim against H&N. Dianne appeals the district court's denial of her breach of fiduciary duty claims against Burke.

¶16 We have jurisdiction under Utah Code section 78A-3-102(3)(j).

## ANALYSIS

¶17 We begin our analysis with a brief discussion of Vicki's standing to challenge the dissolution of H&N on appeal. We then turn to the merits of the appeal and find that the district court erred in its orders to dismiss H&N's election, remove Burke as manager, and dissolve the company. As such, we reverse the district court's orders and remand this case back to the district court with instructions to continue with the election proceedings in accordance with the election statute. Because we reverse the district court's orders dismissing H&N's election, dissolving H&N, and removing Burke as manager, all of the remaining claims on appeal have been rendered moot or must be reversed.

## I. VICKI HAS STANDING TO APPEAL THE DISSOLUTION OF H&N

¶18 As a threshold matter, the parties disagree on whether Vicki has standing to appeal the district court's dismissal of H&N's election to purchase Dianne's membership interest in lieu of dissolution.[5] Dianne and H&N (via its receiver) argue that Vicki does not have standing to challenge the dismissal of H&N's election because this right was reserved to the company by statute. *See* UTAH CODE § 48-2c-1214; *see also Provo City Corp. v. Thompson*, 2004 UT 14, ¶ 9, 86 P.3d 735 ("[A] party may generally assert only his or her own rights and cannot raise the claims of third parties who are not before the court."). Nevertheless, because we find that Vicki has standing to appeal the district court's order to dissolve H&N, we find that Vicki also has standing on appeal to argue that the dissolution of H&N was improper because the district court should have granted H&N's election in lieu of dissolution.

---

[5] Because H&N is now under the control of a receiver, only Vicki has appealed the district court's dismissal of H&N's election.

¶19 Utah Code section 48-2c-1213(3) states that a "court's order [for dissolution] may be appealed as in other civil proceedings." And, to appeal a judgment in other civil proceedings, "an appellant generally must show both that he or she was a party or privy to the action below and that he or she is aggrieved by that court's judgment." *Chen v. Stewart*, 2005 UT 68, ¶ 50, 123 P.3d 416 (citation omitted). Additionally, "[o]n appeal, a party whose standing is challenged must show that he or she had standing under the traditional test in the original proceeding before the district court." *Id.* (citation omitted). Here, Vicki satisfies all these requirements.

¶20 Vicki was a party to the action below, and Vicki was aggrieved by the dissolution order because, once liquidated, Vicki will no longer be a 50% member of H&N. "A member's interest in a company is personal property," UTAH CODE § 48-2c-701(1), and while Vicki would be compensated for her membership interest through the liquidation proceedings, individuals are not required to sell or liquidate personal property against their will. *Cf. Fox v. Piercey*, 227 P.2d 763, 765 (Utah 1951) ("'Duress' is unlawful constraint whereby one is forced to do some act against one's will."). Moreover, company interests sold pursuant to judicial dissolution or liquidation typically garner less value than interests sold without any compulsion to sell.[6]

¶21 Vicki also satisfies the requirement of having standing under the traditional test in the original proceedings. Rights related to the judicial dissolution of a limited liability company are conferred by statute, and to have standing to assert statutory rights under the traditional test, a party's alleged injury (1) must be distinct and palpable and (2) must fall within the "zone of interest" the relevant statute seeks to protect. *See In re Questar Gas Co.*, 2007

---

[6] *See, e.g.,* Arthur J Shartsis, *Dissolution Actions Yield Less than Fair Market Enterprise Value (Appraising for "Fair Value" Under California Corporations Code Section 2000)* (2011 reprint) (originally published in BUSINESS VALUATION UPDATE), https://www.sflaw.com/wp-content/uploads/2016/02/AShartsis-Fair-Market-Value.pdf; Charles W. Murdock, *The Evolution of Effective Remedies for Minority Shareholders and Its Impact Upon Valuation of Minority Shares*, 65 NOTRE DAME L. REV. 425, 442 (1990).

UT 79, ¶¶ 59, 61, 175 P.3d 545; *see also Forsberg v. Bovis Lend Lease, Inc.*, 2008 UT App 146, ¶ 9, 184 P.3d 610 ("Standing to assert rights created by statute requires that the plaintiff be within the zone of interest contemplated by [the statute] and have suffered a distinct and palpable injury." (alteration in original) (internal quotation marks omitted)). Utah's LLC statute grants members of a limited liability company the right to petition a court for judicial dissolution on the grounds that the company's manager acted in a manner that was illegal, oppressive, or fraudulent. *See* UTAH CODE § 48-2c-1210(2)(b). Because a member has a statutory right to initiate judicial dissolution proceedings, it follows that the ability of a member to object to judicial dissolution is likewise within the zone of interest protected by Utah's LLC statute. *See id.* And Vicki's injury is distinct and palpable for the same reason she is an aggrieved party on appeal: the dissolution of H&N will cause Vicki to lose her status as a 50% member of H&N.

¶22 Therefore, Vicki meets all the requirements to appeal the district court's dissolution order. Vicki was a party to the action below, was aggrieved by the order to dissolve H&N, and had standing to object to the dissolution of H&N in the original proceedings. And because Vicki has standing to appeal the dissolution of H&N, she also has standing to make the argument that the district court erred in dissolving H&N because the court should have granted H&N's election.[7]

---

[7] Dianne also argues that Vicki waived any challenge to the district court's dismissal of H&N's election because Vicki failed to raise this issue in her opening brief. According to Dianne, Vicki only challenged the district court's actions with respect to Vicki's "conditional" election. We disagree. While it is true that Vicki's opening brief fails to artfully present the issues on appeal, the substance of Vicki's brief argues that the election statute "does not confer on the court equitable authority to set aside an election at the request of the party who sued for dissolution," that "Dianne could not revoke the elections of H&N or of Vicki," and that "neither H&N nor Vicki invoked the revocability provision of section 48-2c-1214(1)." Dianne appears to have interpreted Vicki's argument to this effect, as Dianne notes in her response brief that the first issue on appeal is whether "the district court exceed[ed] its discretion by setting aside H&N's and Vicki's election." Moreover, Vicki's counsel clarified in both oral arguments and

## II. THE DISTRICT COURT ERRED IN DISSOLVING H&N

¶23 Turning to the merits, we find that the district court erred in dissolving H&N for two distinct reasons. First, the district court erred in dissolving H&N because the clear terms of the election statute require the district court to grant H&N's duly-filed election in lieu of dissolution. And second, the district court erred in dissolving H&N because the court did so at the close of an unrelated valuation hearing—without affording Vicki (a 50% member of H&N and a party to the proceedings) prior notice or an opportunity to be heard.

### A. *The District Court Erred in Dismissing H&N's Election*

¶24 The Utah Revised Limited Liability Company Act of 2001 granted members, for the first time, the right to petition for the judicial dissolution of their company on the grounds that the manager acted in a manner that was "illegal, oppressive, or fraudulent." UTAH CODE § 48-2c-1210(2)(b). This same act, however, granted companies and non-petitioning members the corollary right to avoid dissolution by timely electing to purchase the petitioning member's interest in the company at its "fair market value." *Id.* § 48-2c-1214(1). H&N timely exercised this right when it filed an election to purchase Dianne's shares within 90 days of Dianne's petition for dissolution. *See id.* § 48-2c-1214(2). Once timely filed, H&N's right to purchase Dianne's membership interest was absolute—and the district court erred in treating H&N's election as a mere optional right subject to the equitable discretion of the courts.

¶25 The district court located its authority to dismiss H&N's election and order dissolution in subsection 1214(1) of the election statute. That provision states that "[a]n election pursuant to this section is irrevocable unless the court determines that it is equitable to set aside or modify the election." *Id.* § 48-2c-1214(1). The court reasoned that this provision "grants the court express statutory authority to set aside the election made by H&N . . . in the interest of equity." Nevertheless, the district court's opinion

---

supplemental briefing that Vicki was appealing both the dismissal of her election as well as H&N's election and that, "regardless of which party challenges the district court's actions, the arguments are the same."

misapprehends both the plain meaning and the purpose of subsection 1214(1).[8]

1. The Plain Meaning of Subsection 1214(1)

¶26 When interpreting a statute, "we first look to the plain language of the statute and seek to interpret it in harmony with other statutes in the same chapter and related chapters." *Kamoe v. Ridge*, 2021 UT 5, ¶ 15, 483 P.3d 720 (citation omitted) (internal quotation marks omitted). Here, the plain language of subsection 1214(1), both by itself and when read in harmony with other provisions in the statute, makes clear that courts do not have the authority to dismiss or deny duly-filed elections. Once a party duly-files an election, courts only have the discretion to approve or deny the *electing party's* request to set aside or modify the election.

¶27 Subsection 1214(1) states: "An election pursuant to this section is irrevocable unless the court determines that it is equitable to set aside or modify the election." The use of the word "irrevocable" is instructive. Utah law consistently uses the word "irrevocable" to indicate that an action cannot be undone by the actor who initiated it.[9] Similarly, in every instance in which some

---

[8] "A district court's interpretation of a statute is a question of law, which we . . . review for correctness." *Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 10, 227 P.3d 256. The availability of an equitable remedy is a legal conclusion that is also reviewed for correctness, and the formulation and application of an equitable remedy is reviewed for an abuse of discretion. *See Ockey v. Lehmer*, 2008 UT 37, ¶ 42 n.38, 189 P.3d 51.

[9] For example, an irrevocable trust is one that cannot be undone by the settlor. *See* UTAH CODE § 75-7-605(1) ("Unless the terms of a trust expressly provide that the trust is irrevocable, the settlor may revoke or amend the trust."); *In re Hoopiiaina Trust*, 2006 UT 53, ¶¶ 3 n.2, 31, 144 P.3d 1129 (holding that the settlor of two trusts "could not revoke or modify the trusts" where the trusts documents provided: "This trust shall be irrevocable. At no time shall any beneficial interest in the property inure to the Settlor"). Similarly, a bidder at a public auction makes an "irrevocable offer" to buy the bid-for property and is subject to penalties if she fails to do so. *See* UTAH CODE § 57-1-27 (providing that a bidder at a sale of trust property by public auction makes an "irrevocable offer" and, in the event of a refusal to pay, loses her deposit and is liable for

form of the verb "revoke" is used in the Utah Revised Limited Liability Company Act, the verb implies action from the party who first initiated the specified act. *See, e.g.*, UTAH CODE § 48-2c-403(1)(e) (an LLC may "revoke[]" the authority of its registered agent.); *id.* § 48-2c-706 (any member of an LLC may consent to the LLC taking action without meeting or prior notice, but any member may "revoke" such consent.); *id.* § 48-2c-1205 (an LLC that has filed for voluntary dissolution "may revoke" such dissolution within 120 days of the dissolution). Interpreted in this context, the word "irrevocable" as used in subsection 1214(1) must refer to revocation by the party who elected to purchase the membership interest of the member who petitioned for dissolution. And the substance of this provision sets forth a general rule that once a party elects to purchase a member's interest under the statute, that party cannot back out of the election.

¶28 The remainder of subsection 1214(1) provides an exception to this general rule: noting that an election is irrevocable "*unless* the court determines that it is equitable to set aside or modify the election." (emphasis added). The word "unless" has the same logical meaning as "except if,"[10] making it clear that the court's equitable power to set aside an election rests only as an *exception* for the electing party to request if it wants to back out of an otherwise irrevocable election. Nowhere does this sentence confer to the court discretion to dismiss or deny a duly-filed election for equitable reasons.

¶29 Two additional provisions of the election statute support our conclusion that a company has an absolute right to avoid dissolution by filing a timely election. First, subsection 1214(2)(a) sets forth election filing procedures and states that if the company files an election within 90-days of the petition for dissolution, "the

---

"any loss occasioned by the refusal"); *see also* UTAH R. CIV. P. 69B(f) ("Every bid [at a sheriff's sale] is an irrevocable offer. If a person refuses to pay the amount bid, the person is liable for the difference between the amount bid and the ultimate sale price."). And under the Utah Adoption Act, a consent to adoption of a child, or a relinquishment of a child for adoption, "may not be revoked" once signed. UTAH CODE § 78B-6-126.

   [10]     *See     Unless*,     CAMBRIDGE     DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/unless (last visited Jan. 31, 2022) (defining "unless" as "except if").

company shall purchase the interest in the manner provided in this section." This is a straightforward mandate—indicating that once the company files an election, all parties are locked into that course of action. This mandate does not permit the court to object to the election on equitable grounds.

¶30 Second, subsection 1214(2)(e) states that, once an election has been filed, the dissolution proceedings "may not be discontinued or settled, nor may the petitioning member sell or otherwise dispose of his interest in the company, unless the court determines that it would be equitable to the company and the members, other than the petitioning member," to permit such a disposition. In other words, once the company files its election in lieu of dissolution, the petitioning member is obligated to sell its interest to the company—except if the court, in the interest of equity, allows the petitioning member to "discontinue[] or settle" the proceedings or dispose of the member's interest in some other manner. This section does not permit the petitioning member to avoid the sale of its interest by moving the court to dismiss a duly-filed election in equity. Instead, the petitioning member can only avoid the sale of its membership interest to the electing party by withdrawing its petition for dissolution or disposing of its membership interest with court approval. And even here, the court is only permitted to grant the petitioning member this relief if "the court determines it would be equitable to the company and the members, other than the petitioning member." *Id.* § 48-2c-1214(2)(e).

¶31 Therefore, the plain language of subsection 1214(1), interpreted in harmony with other provisions in the same section and chapter, makes clear that a company has an absolute right to avoid dissolution by timely filing an election to purchase the petitioning member's interest. The petitioning member must accept the sale of its membership interest or seek leave from the court to withdraw its petition for dissolution or dispose of its membership interest in some other manner. But the plain language of the election statute does not permit the court to dismiss a duly-filed election on equitable grounds in order to proceed with the dissolution of the company.

2.  The Purpose of Subsection 1214(1)

¶32 "The best evidence of the legislature's intent is the plain language of the statute," *State v. Ogden*, 2018 UT 8, ¶ 31, 416 P.3d 1132 (citation omitted) (internal quotation marks omitted), and we look beyond a statute's plain language only if the relevant

language is ambiguous, *Graves v. N.E. Services, Inc.*, 2015 UT 28, ¶ 67, 345 P.3d 619. We do not believe the language in subsection 1214(1) is ambiguous. However, we recognize that the district court in this case interpreted the statute differently. We also recognize that the New Hampshire Supreme Court has likewise interpreted a similar statute (governing limited liability companies in New Hampshire) to grant district courts discretion to dismiss duly-filed elections in equity. *See Bendetson v. Killarney, Inc.*, 913 A.2d 756 (N.H. 2006). As such, we find it prudent to briefly describe how our interpretation of subsection 1214(1) aligns with the purpose of the election statute in light of its legislative history and relevant commentary.

¶33 The Utah Legislature modeled subsection 1214(1) on a similar provision found in the Utah Revised Business Corporation Act. *See* Brent R. Armstrong, *New Revisions to Utah's Limited Liability Company Act—the LLC Revolution Rolls On*, UTAH BAR JOURNAL, August/September 2001, at 8, 12. Indeed, the language of both provisions is identical. *Compare* UTAH CODE § 48-2c-1214(1), *with id.* § 16-10a-1434(1). The Official Commentary to the Utah Revised Business Corporation Act notes that many courts "hesitate[] to award dissolution . . . because of its adverse effects on shareholders, employees, and others who may have an interest in the continuation of the business." OFFICIAL COMMENTARY TO UTAH REVISED BUSINESS CORPORATION ACT, at 437 (Utah State Bar and Utah Business Corporation Act Revision Committee eds., 1992). The commentary continues by explaining that "it is rarely necessary to dissolve the corporation and liquidate its assets in order to provide relief." *Id.* Instead, "the rights of a petitioning shareholder are fully protected by liquidating only that shareholder's interest and paying the fair value of such shareholder's shares while permitting the remaining shareholders to continue the business." *Id.* As such, the commentary states that the corporate election statute "affords an orderly procedure by which a dissolution proceeding . . . can be terminated upon payment of the fair value of the petitioner's shares." *Id.*

¶34 Notably, the commentary states that an "election to purchase is wholly voluntary, but it can be made as a *matter of right* within 90 days" after a petitioner files for dissolution. *Id.* (emphasis added). Once an election is filed, "[t]he petitioner becomes irrevocably committed to sell the shares." *Id.* The commentary also notes that the law makes elections irrevocable (subject to the court's discretion) in order to "reduce the risk that . . . the buyout election will be used for strategic purposes." *Id.*

¶35 Read as a whole, the commentary to the Utah Revised Business Corporation Act reinforces what a comprehensive, plain-meaning reading of subsection 1214(1) already tells us: An electing company or member has an absolute right to avoid dissolution. The legislature granted electing parties this right in order to avoid the costly and often unnecessary nature of dissolution. The specific provision providing that an election "is irrevocable unless the court determines that it is equitable" to set it aside was crafted for the express purpose of reducing the risk that a party would file and then revoke an election for strategic purposes. This framework leaves no room for a court to deny a duly-filed election unilaterally in the name of equity.[11]

3. Conclusion

¶36 The district court erred when it found that subsection 1214(1) gave it discretion to "set aside the election made by H&N . . . in the interest of equity." It is undisputed that H&N timely filed its election and never sought to revoke it. As such, H&N could make its election as a matter of right, and the district court lacked the power to dismiss the election and order the dissolution of H&N. Accordingly, we reverse the district court's decision to

---

[11] Our interpretation of subsection 1214(1) is further bolstered by the legislative history of a similar provision in New York. New York Business Corporation Law section 1118 grants companies and shareholders the right to avoid dissolution by electing to purchase the shares of a shareholder petitioning for dissolution. *See* N.Y. BUS. CORP. LAW § 1118 (2021). Subsection 1118(a) of this statute states: "An election pursuant to this section shall be irrevocable unless the court, in its discretion, for just and equitable considerations, determines that such election be revocable." *Id.* However, "[a]s originally enacted, section 1118 permitted electing shareholders to revoke their elections at any time." *In re Dissolution of Penepent Corp.*, 96 N.Y.2d 186, 192 (N.Y. 2001). "The amendment was prompted by concerns that majority shareholders could make section 1118 elections, prolong negotiations as to the fair value, and then revoke their elections, thus delaying the dissolution proceedings and exhausting the petitioning shareholder's resources." *Id.* Thus, the legislative history of this provision in New York makes clear that courts' equitable considerations are limited to guarding against the unfair revocation of an election by the electing party.

dismiss H&N's election, dissolve H&N, and appoint a receiver to liquidate H&N's assets. And we remand this case back to the district court with instructions to continue the valuation and election proceedings in a manner consistent with this opinion and the election statute.[12]

*B. The District Court Violated Vicki's Due Process Rights by Ordering the Dissolution of H&N and the Removal of Burke as Manager Without Notice or an Opportunity to Be Heard*

¶37 The district court also erred in ordering the dissolution of H&N for the independent reason that it did so *sua sponte*—without providing Vicki (a 50% member of H&N and a party to the lawsuit) notice and an opportunity to be heard.[13] "In our judicial system . . . all parties are entitled to notice that a particular issue is being considered by a court and to an opportunity to present evidence and argument on that issue before decision." *Plumb v. State*, 809 P.2d 734, 743 (Utah 1990). A court's "failure to give adequate notice and opportunity to participate can constitute a denial of due process under article I, section 7 of the Utah Constitution." *Id.* Indeed, "[n]otice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party." *See Jordan v. Jensen*, 2017 UT 1, ¶ 20, 391 P.3d 183 (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983)). Here, the district court deprived Vicki of her constitutional due process rights when it ordered the

---

[12] Vicki also appeals the district court's denial of her "conditional" election to purchase Dianne's shares in the event that the court found H&N's election ineffective or invalid. However, the election statute does not contemplate a "conditional" election made by a member after the company has already filed an election. A member "may elect to purchase" a petitioning member's interest only "if [the company] fails to elect." UTAH CODE § 48-2c-1214(1). As such, because H&N did file an election to purchase Dianne's interest, Vicki's "conditional" election was void *ab initio*.

[13] Whether the district court gave constitutionally adequate notice that the stayed removal and dissolution claims and the issues of fraud and oppression would be decided at the valuation hearing is a legal issue that is reviewed for correctness. *See Salt Lake Legal Defender Ass'n v. Atherton*, 2011 UT 58, ¶ 9, 267 P.3d 227.

dissolution of H&N and the removal of Burke as manager without providing her notice or an opportunity to be heard.

¶38 The district court ordered the dissolution of H&N at the close of a fair market valuation hearing of Dianne's membership interest in H&N. The district court's Scheduling Order for the valuation hearing stated that the purpose of the evidentiary hearing was "to determine the fair market value of Dianne C. Nelson's interest in H&N Holdings, LLC." Likewise, the Prehearing Order stated that the court would hold a "three-day valuation hearing . . . with respect to the value of Dianne Nelson's interest in H&N Holdings, LLC." Neither of these orders adequately informed Vicki "of the nature of the proceedings against [her]," as they failed to indicate that the court would also consider Dianne's claim for the dissolution of H&N and the removal of Burke as manager. *See Nelson v. Jacobsen*, 669 P.2d 1207, 1212 (Utah 1983) (finding notice of trial "constitutionally deficient" where it "described the nature of the proceedings" in "ambiguous terms").

¶39 Moreover, the dissolution and removal claims were never briefed or argued before the court.[14] In fact, the district court had stayed both claims before the hearing—thereby depriving Vicki of the opportunity to pursue discovery on the claims. "It is error to adjudicate issues not raised before or during trial and unsupported by the record. . . . [A] trial court has no authority to render a decision on issues not presented for determination. Any findings

---

[14] While the district court admitted evidence of the fraud and oppression claims against Burke at the valuation hearing in connection with Dianne's claims for attorney fees under the election statute, *see* UTAH CODE § 48-2c-1214(5)(d), this did not entitle the court to consider that evidence in connection with Dianne's dissolution and removal claims. Once a petitioning member's shares have been bought-out pursuant to the election statute, Utah Code section 48-2c-1214(5)(d) allows the court to award attorney fees to that member upon a showing that there was "probable ground" for dissolution. However, this "probable ground" standard is a lesser burden of proof than the "preponderance of evidence" or "clear and convincing" standard that would be necessary to prove fraud or oppression in the proper setting.

rendered outside the issues are a nullity." *Combe v. Warren's Family Drive-Inns, Inc.*, 680 P.2d 733, 736 (Utah 1984) (citation omitted).

¶40 Accordingly, we reverse (on independent grounds) the district court's *sua sponte* orders dissolving H&N and removing Burke because we find that they violated Vicki's constitutional due process rights. And because these issues were not properly before the court during the valuation hearing, we nullify any findings of fact made by the district court concerning these claims.[15]

### III. REMAINING CLAIMS

¶41 Because we reverse the district court's orders dismissing H&N's election, dissolving H&N, and removing Burke as manager, all of the remaining claims on appeal have been rendered moot or must be reversed.

¶42 First, Burke appeals the district court's denial of his unjust enrichment claim on summary judgment. This claim rests on Burke's allegation that H&N failed to compensate Burke for his services while managing the company. Nevertheless, Burke's counsel conceded at oral argument that this claim would be moot if the dissolution and receivership orders were "unwound." And because we reverse the district court's order to dissolve H&N, we find this claim moot.

¶43 Second, Vicki appeals the district court's award of attorney fees to Dianne under Utah Code section 48-2c-1214(5)(d). Under the election statute, the district court may award to the petitioning member "reasonable fees and expenses of counsel and experts" if it finds that the petitioning member had "probable ground" for dissolution. UTAH CODE § 48-2c-1214(5)(d) (citing *id.* § 48-2c-1210(2)). Vicki argues on appeal that the attorney fee provision of the election statute "only applies where an election has been successfully made." Because we reverse the district court's dismissal of H&N's election and remand this case back to the district court for further election proceedings, we need not consider this argument. Assuming H&N's election to purchase Dianne's interest is finalized, Vicki's argument on appeal will be

---

[15] "[T]he effect of a given set of facts is a question of law and, therefore, one on which an appellate court owes no deference to a trial court's determination." *State v. Pena*, 869 P.2d 932, 936 (Utah 1994), *abrogated on other grounds by Campbell v. State Farm Mutual Auto Ins. Co.*, 2001 UT 89, ¶ 13, 65 P.3d 1134.

moot. We, therefore, remand the finding of attorney fees back to the district court with instructions to reconsider this issue at the end of the election proceedings.

¶44 Finally, Dianne appeals the district court's summary judgment order denying her breach of fiduciary duty claims against Burke and finding that Dianne lacked standing to challenge H&N's ability to pay legal fees and expenses incurred in this litigation. Dianne argues that she can make these claims directly, as the injuries stemming from the alleged misconduct uniquely impact her. Alternatively, Dianne argues that she should be able to make these claims derivatively under the closely held corporation exception as stated in *Aurora Credit Services, Inc. v. Liberty West Development, Inc.*, 970 P.2d 1273 (Utah 1998). Nevertheless, Dianne never stated a claim challenging H&N's ability to pay legal fees and expenses incurred in this litigation until after the district court dismissed H&N's election and ordered dissolution.[16] And the district court did not deny Dianne's breach of fiduciary duty claims against Burke until nearly a year after the district court ordered the dissolution of H&N.[17] Because our decision winds back the clock on this litigation and remands this case back to the district court with instructions to continue the election proceedings, we reverse the district court's next-in-time

_____

[16] Indeed, this claim will likely be moot assuming H&N's election to purchase Dianne's interest in the company is finalized upon remand. The district court has discretion to consider the effect of H&N's expenses related to this litigation when it determines the fair market value of Dianne's interest. *See* UTAH CODE § 48-2c-1214(4) ("[T]he court shall . . . determine the fair market value of the petitioning member's interest in the company as of the day *before* the date on which the petition [for dissolution] was filed or as of any other date the court determines to be appropriate under the circumstances and based on the factors the court determines to be appropriate." (emphasis added)).

[17] We also note that Dianne has misinterpreted the district court's ruling on her breach of fiduciary duty claims against Burke. Dianne seems to think the district court disposed of all her breach of fiduciary duty claims on a lack of standing. Nevertheless, the district court dismissed some of her fiduciary duty claims on the merits after finding "no evidence of any injury to H&N or the . . . Nelsons."

orders and remand for further proceedings in light of this material change in facts and circumstances.

## CONCLUSION

¶45   We find that the district court erred when it dismissed H&N's election and ordered the dissolution of H&N and the removal of Burke as manager. Pursuant to the election statute, H&N had an absolute right to avoid dissolution by purchasing Dianne's interest in the company at its fair market value. Moreover, the district court violated Vicki's constitutional due process rights by ordering the dissolution of H&N and the removal of Burke as manager without providing her fair notice and an opportunity to be heard. Accordingly, we reverse the district court's orders dismissing H&N's election, dissolving H&N, and removing Burke as manager. We remand this case back to the district court with instructions to continue the election proceedings concerning H&N's duly-filed election in a manner consistent with this opinion and the clear dictates of the election statute.