# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA
_____

Case No. 5D2024-1156
LT Case No. 2021-11378-CIDL
_____

DELTONA TRANSFORMER
CORPORATION,

Appellant,

v.

DELTRAN OPERATIONS USA,
INC., CARSON CLARKE, CHASE
CLARKE, MICHAEL PRELEC, JR.,
MICHAEL PRELEC, SR., and EVIN
DYON,

Appellees.

_____

Nonfinal appeal from the Circuit Court for Volusia County.
Kathryn Diane Weston, Judge.

Daniel E. Nordby and Tara R. Price, of Shutts & Bowen LLP,
Tallahassee, and Eric C. Christu and Devon A. Woolard, of Shutts
& Bowen LLP, West Palm Beach, for Appellant.

Hala Sandridge, of Buchanan Ingersoll & Rooney PC, and Stanley
T. Padgett, of Padgett Law, P.A., Tampa, for Appellees Deltran
Operations USA, Inc.

John J. Agliano, of Bajo Cohen Agliano P.A., Tampa, for
Appellees, Carson Clarke, Chase Clarke, and Michael Prelec, Jr.

No Appearance for Remaining Appellees.

June 26, 2026

MAKAR, J.

This case involves a dispute among a father and family members over the control and operation of Deltona Transformer Corporation ("DTC"), a family-owned and closely held corporation, and its former subsidiary, Deltran Operations USA, Inc. ("Deltran"). DTC sought to dissolve Deltran, and Deltran countered with an "irrevocable" election to buy out DTC's shares in Deltran. At issue is the application of Florida's buyout election statute, which deems an election "irrevocable" yet allows courts to "set aside or modify" an election on equitable grounds. *See* § 607.1436(1), Fla. Stat. (2026).

I.

In 1965, Michael G. Prelec founded DTC, which later developed the commercially successful Battery Tender® line of products centered around battery chargers and related items. In 2004, his son, Michael Prelec, Sr. (father), assumed control of DTC. In 2013, Deltran was formed as a subchapter C corporation with DTC as its sole shareholder. In 2016, Deltran authorized issuance of 100 Common Class A shares of stock and one Common Class B share of stock. The Class A shares were issued to the father's family members as follows: Michael Prelec, Jr. (son), 35 shares; Evin Dyon (daughter), 35 shares; Carson Clarke (nephew), 15 shares; and Chase Clarke (nephew), 15 shares.

DTC retained the sole Class B share, which entitles the holder to vote on certain matters that require the unanimous consent of all shareholders. The holder of the Class B share can essentially veto major corporate matters such as the payment of dividends. It is an unusual stock because it has no entitlement to dividends but has powerful voting rights. Both classes of stock grant the holders a lifetime seat on Deltran's board of directors.

Family discord over the operation of the companies eventually ensued. As a result, DTC, the father, and the daughter (Petitioners) filed an eight-count complaint against Deltran and its

2

remaining shareholders—the son and nephews ("Individual Shareholders")—alleging various acts of malfeasance in the operation of Deltran. Petitioners sought a dissolution of Deltran.

In response, Deltran filed a notice of election to purchase the Deltran shares owned by DTC (one Class B Share) and the daughter (35 Class A shares) for fair value pursuant to section 607.1436(1), Florida Statutes. This statute, entitled "Election to purchase instead of dissolution," is designed to promote the buyout of a complaining shareholder's ownership interest rather than dissolve or liquidate a corporation. The Individual Shareholders filed their own notice of election to purchase the shares if Deltran could not do so.

Petitioners moved to set aside Deltran's notice of election, arguing that the equities of the situation justified doing so. The trial court, however, determined it lacked "the power to entertain the [Petitioners'] motion" because the "election that the [Individual Shareholders] made, shall be irrevocable" pursuant to section 607.1436(1), which states:

> In a proceeding under s. 607.1430(1)(b), the corporation may elect or, if it fails to elect, one or more shareholders may elect to purchase all shares owned by the petitioning shareholder at the fair value of the shares. *An election pursuant to this section shall be irrevocable unless the court determines that it is equitable to set aside or modify the election.*

§ 607.1436(1), Fla. Stat. (emphasis added). In the trial court's view, the highlighted language must be read such that only the electing shareholders can revoke an election. The trial court ultimately held evidentiary hearings and entered a valuation judgment to effectuate the buyout election from which DTC now appeals.[1]

---

[1] The daughter settled her claim and is not a party in this appeal.

## II.

At issue is the application of section 607.1436(1), Florida Statutes, which creates an option to a judicial dissolution of a corporation that allows the target corporation or its shareholders to buy out the petitioning shareholder's interest. As a commentator has described:

> Judicial dissolution of a closely held corporation, the "corporate divorce," is one of the most acrimonious, expensive, and, by almost all accounts, unpopular of legal remedies available in business litigation. Modern corporate statutes tend to reflect this widely held aversion by providing courts and litigants with a variety of alternatives to ending a business's existence. The buyout election, for example, a sort of call option patterned after common law remedies and American Bar Association ("ABA") model legislation, provides one means by which shareholders and corporations can avoid the extreme remedy of corporate dissolution by forcing complaining shareholders to sell their stock to them.

*See* Matthew C. Lucas, *Revoking the Irrevocable Buyout: Aligning Equity with Due Diligence in Corporate Dissolution*, 75 Alb. L. Rev. 15, 15 (2012). Section 607.1436(1) is Florida's version of the buyout election. The interpretative question presented, in part, is whether a notice of election can be set aside or modified on equitable grounds by a petitioning shareholder—here, DTC.

DTC argues that the trial court erred in its interpretation of the buyout statute in concluding that section 607.1436(1) precluded it from entertaining DTC's motion to set aside Deltran's election on equitable grounds; DTC further claims the trial court erroneously concluded that the statute allows only an electing shareholder to seek revocation on equitable grounds, not a petitioning shareholder. Deltran counters that vacating an election for equitable reasons renders the statutory purchase right meaningless; instead, the election right is "absolute" and designed to afford the corporation and remaining shareholders the power to end destructive litigation.

4

As discussed below, appellate courts nationwide have fallen on both sides of the interpretative question of whether a section 607.1436(1)-type election is irrevocable. Does it create an absolute right to purchase shares, or is it conditional based on equitable considerations that either party can raise?[2] No Florida court has yet weighed in.[3]

To begin, the plain language of the statute seems to answer the primary question. An election is "irrevocable *unless* the court determines that it is equitable to set aside or modify the election." § 607.1436(1), Fla. Stat. (emphasis added). It is apparent that the statute "serves as a streamlined solution for breaking a corporate deadlock" and that its "plain language . . . provides the corporation or its shareholders a substantive right to end a deadlock by purchasing a petitioning shareholder's shares and places timelines on the process." *Royal United Props., Inc. v. Royal*, 370 So. 3d 1020, 1023 (Fla. 6th DCA 2023). It is equally apparent—as the word *unless* suggests—that an "irrevocable" election is not absolute due to the qualification that a court "may set aside or modify the election" when equitable to do so. *See* § 607.1436(1), Fla. Stat.

On this basis alone, the trial court's determination that it lacked any power to entertain a motion by DTC, the petitioning shareholder, to set aside the election on equitable grounds was error. The statute clearly grants a trial court the power to set aside or modify an election on equitable grounds, thereby rendering an election less than absolute.

The parties, however, dispute to whom the "equitable" language applies. DTC claims that it refers not only to the entity

---

[2] *Contrast Hills v. Nelson*, 506 P.3d 552, 558–59 (Utah 2022) *with Bendetson v. Killarney, Inc.*, 913 A.2d 756, 763–64 (N.H. 2006) *and Giulietti v. Giulietti*, 784 A.2d 905, 943 (Conn. App. Ct. 2001).

[3] *See Royal United Props., Inc. v. Royal*, 370 So. 3d 1020, 1024 (Fla. 6th DCA 2023) ("We do not, by this opinion, address whether Petitioners' right to purchase Respondent's shares is an unconditional right.").

5

that elected to purchase the shares—Deltran—but also to a petitioner, like itself, which sought dissolution of the target company. Deltran argues the opposite, claiming that the equitable language refers only to the party making the election (here, Deltran), not the petitioning shareholders.

DTC cites cases from two of our sibling courts, but neither is helpful on this point. *See Royal United*, 370 So. 3d at 1024 ("We acknowledge that section 607.1436(1) states that a notice of election may be set aside if the court determines that it is equitable to set aside or modify the election."); *Fierro v. Templeton*, 857 So. 2d 931, 933 (Fla. 4th DCA 2003) (noting in dicta that "the language in subsection one of section 607.1436 . . . gives the court the discretion to set aside or modify an election to purchase for equitable reasons"). Neither case involved a petitioning shareholder's ability to set aside a notice of election. Deltran, in support of its position, cites the Florida Bar's Business Law Section's commentary on the 2019 amendments to the corporation code. The commentary on section 607.1430 states that the "corporation has an absolute right to purchase the interest in the corporation of the petitioning shareholder for fair value under s. 607.1436, which provides the corporation and the remaining shareholders with an ability to end the litigation if they so choose."[4] This commentary, however, fails to recognize that portion of section 607.1436(1) that makes the otherwise irrevocable election conditional and subject to equitable concerns.

Because neither these cases nor the commentary answers the question, the parties rely on cases from other states, which provide support for both viewpoints. Each of the cases involves statutes identical to section 607.1436(1) in all relevant respects.

First, Deltran relies on *Hills v. Nelson*, 506 P.3d 552 (Utah 2022). In that case, the Utah Supreme Court determined that "courts only have the discretion to approve or deny the *electing*

_____

[4] The Florida Bar RPPTL Section, *See Modifications to Chapter 607 of the Florida Statutes and to Certain Sections of Other Florida Entity Statutes*, https://www.rpptl.org/uploads/FinalStatutewithcommentary.pdf.

*party's* request to set aside or modify the election." *Id.* at 559. The court explained its reasoning:

> The use of the word "irrevocable" is instructive. Utah law consistently uses the word "irrevocable" to indicate that an action cannot be undone by the actor who initiated it. Similarly, in every instance in which some form of the verb "revoke" is used in the Utah Revised Limited Liability Company Act, *the verb implies action from the party who first initiated the specified act*. Interpreted in this context, the word "irrevocable" as used in subsection 1214(1) must refer to revocation by the party who elected to purchase the membership interest of the member who petitioned for dissolution. And the substance of this provision sets forth a general rule that once a party elects to purchase a member's interest under the statute, that party cannot back out of the election.
>
> The remainder of subsection 1214(1) provides an exception to this general rule: noting that an election is irrevocable "*unless* the court determines that it is equitable to set aside or modify the election." (emphasis added). The word "unless" has the same logical meaning as "except if," making it clear that the court's equitable power to set aside an election rests only as an *exception* for the electing party to request if it wants to back out of an otherwise irrevocable election. Nowhere does this sentence confer to the court discretion to dismiss or deny a duly-filed election for equitable reasons.

*Hills*, 506 P.3d at 559–60 (emphasis added and internal citation omitted). The court's conclusion—that only the electing party can invoke the equitable exception—is based on an *implication* the court discerned in the use of the word "revoke" throughout Utah's corporate code; its conclusion that the equitable exception applies only if the "electing party . . . wants to back out of an otherwise irrevocable election" is based on this somewhat shaky implication. Moreover, the statement that the statute confers no discretion on a court to dismiss or set aside an election at the petitioning party's request seems insupportable given the clear statutory authority allowing such action.

7

Next, DTC relies on *Bendetson v. Killarney, Inc.*, 913 A.2d 756 (N.H. 2006), which came to a different conclusion than the court in *Hills*. The New Hampshire Supreme Court agreed that the "term 'irrevocable' commonly describes the relationship between an actor and an action initiated by that actor. Thus, generally speaking, if an action is irrevocable, the actor who initiated the action may not withdraw it, alter it, or otherwise call it back." *Id.* at 761. The court, however, also said it must "consider the meaning of the term within the context of the dissolution and election provisions, as well as the policy underlying them." *Id.* It turned to the Model Business Corporation Act (upon which the election buyout statute is based), noting a comment explaining that the "dissolution and election provisions were designed 'to reduce the risk that either the dissolution proceeding or the buyout election will be used for strategic purposes.'"[5] *Id.* at 762. The court concluded that the irrevocable language was "intended to bind both the petitioning shareholder to sell his shares and the electing party to buy them, and it does not refer exclusively to the electing party's ability to opt out of his election." *Id.* It concluded that "[n]o language within the election irrevocability provision conditions the trial court's exercise of its equitable power to set aside the election upon one party's request to revoke an election, and we will not read language into the statute that it does not contain." *Id.*

DTC also relies on *Giulietti v. Giulietti*, 784 A.2d 905 (Conn. App. Ct. 2001), which involved, in part, the scope of a court's equitable powers under the election buyout statute. It held that the statute's plain language allowed a trial court to consider the equitable concerns of the electing shareholder *and* the interests of others. It rejected the argument that "the court, in deciding

---

[5] The current version says the provisions "are intended to reduce the risk that either the dissolution proceeding or the buyout election will be used other than in good faith, because under section 14.34 a petitioner using section 14.30(a)(2) becomes irrevocably committed to sell these shares pursuant to section 14.34 once an election is filed." *See* American Bar Association, *Model Business Corporation Act (updated through April 25, 2025)*, (https://www.americanbar.org/content/dam/aba/administrative/business_law/corplaws/mbca-202504.pdf*).*

whether to exercise its discretion to set aside an election, is precluded from considering equities other than what is fair to the electing shareholder himself." *Id.* at 943. It did "not see any such qualification in the plain language of the statute and decline[d] to insert it by implication." *Id.* at 943–44. Moreover, the "plain language of the statute, therefore, gives the court the discretion both to discontinue the corporate dissolution proceedings and to revoke a shareholder's election to purchase the shares of the petitioner when in the court's judgment it would be equitable to do so." *Id.* at 943. The analysis in *Giulietti* is a bit thin, but it reached the pragmatic and linguistically supportable conclusion that the statute's language did not limit equitable concerns to only those of the electing shareholder and it would not imply such a limitation (as was done in *Hills*).

Beyond the non-binding caselaw from other states, DTC points to subsection 607.1436(2), Florida Statutes, which states, in relevant part, that:

> After an election has been filed by the corporation or one or more shareholders, the proceeding [for judicial dissolution of a corporation] under s. 607.1430(1)(b) may not be discontinued or settled, nor may the petitioning shareholder sell or otherwise dispose of his or her shares, unless the court determines that it would be equitable to the corporation and the shareholders, *other than the petitioner*, to permit such discontinuance, settlement, sale, or other disposition.

§ 607.1436(2), Fla. Stat. (emphasis added). DTC points out that this subsection explicitly precludes consideration of what is equitable to the petitioning shareholder in resolving the dissolution proceeding. In contrast, neighboring subsection 607.1436(1) contains no such limitation, which creates a presumption that the omission was purposeful. *See Fla. Legal Servs., Inc. v. State*, 381 So. 2d 1120, 1122 (Fla. 1st DCA 1979) (quoting *Dobbs v. Sea Isle Hotel*, 56 So. 2d 341, 342 (Fla. 1952)) ("Where the legislature creates specific exceptions to the language in a statute, we may apply the rule to infer that 'had the legislature intended to establish other exceptions it would have done so clearly and unequivocally.'"). In other words, if the Legislature wanted to

9

preclude equitable considerations of petitioners in subsection 607.1436(1), it could have done so, but it did not. This point has persuasive force, and is a type of statutory tie-breaker. *See Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) ("Viewed properly as rules of thumb or guides to interpretation, rather than as inflexible rules, the traditional canons of statutory interpretation can aid the interpretive process from beginning to end . . . .").

Finally, Deltran argues that its notice of election is what is irrevocable, and therefore only it may seek to revoke such an election; on the other hand, DTC argues that "irrevocable" refers to the *proceeding initiated* by the notice of election—which binds DTC to sell, and Deltran to purchase, the shares. Stated differently, it is the *proceeding* that is irrevocable unless the court determines the equities require otherwise. This approach parallels that in *Bendetson*, 913 A.2d at 762 (determining irrevocable language was "intended to bind both the petitioning shareholder to sell his shares and the electing party to buy them, and it does not refer exclusively to the electing party's ability to opt out of his election"). This approach avoids the absurd result in which a trial court must enforce a purchase agreement it recognizes as inequitable to the petitioning shareholders.

Overall, the most reasonable interpretation is that subsection 607.1436(1) empowers a trial court to set aside or modify an election on equitable grounds regardless of whether it is the electing party or the petitioning shareholder that raises the matter. An electing party may state equitable grounds to opt out or modify his election and a petitioning shareholder may state equitable grounds to set aside or modify an election. Any number of events might lead an electing purchaser or a petitioning shareholder to second-guess their actions such as "a precipitous decline in business, the defection of key employees, an unexplained loss (or defalcation) of assets, an owner's death." *See* Lucas, *supra*, at 15. Because the trial court erred in its interpretation of the statute, we reverse the valuation judgment and remand to the trial court for further proceedings to consider whether it is equitable to set aside or modify the election on the facts presented.

REVERSED and REMANDED.

10

SOUD and BOATWRIGHT, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____